**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-6513

STEVEN A. WATKINS,

              Petitioner - Appellee,

       v.

JIM RUBENSTEIN, Commissioner of the Division of
Corrections; BENITA F. MURPHY, Chairperson of the West
Virginia Parole Board; DAVID TOLER, Supervising Parole
Officer,

              Respondents - Appellants,

       and

ADRIAN HOKE, Warden at Huttonsville Correctional Center;
MARVIN PLUMLEY, Warden, Huttonsville Correctional Center,

              Respondents.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph R. Goodwin,
District Judge.  (2:12-cv-01309)

Argued: January 29, 2015          Decided: September 23, 2015

Before TRAXLER, Chief Judge, and NIEMEYER and MOTZ, Circuit
Judges.

Reversed by published opinion.  Judge Niemeyer wrote the
majority opinion, in which Chief Judge Traxler joined.  Chief
Judge Traxler wrote a concurring opinion.  Judge Motz wrote a
dissenting opinion.

**ARGUED:** Elbert Lin, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellants. Michael Brian Hissam, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Appellee. **ON BRIEF:** Patrick Morrisey, Attorney General, Christopher S. Dodrill, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellants.

NIEMEYER, Circuit Judge:

The district court granted Steven Watkins' petition for a writ of habeas corpus under 28 U.S.C. § 2254, finding that the West Virginia prosecuting attorney had, after trial, admitted to Watkins' defense counsel that the victim of Watkins' attempted robbery crime told the prosecuting attorney before trial that he, the victim, had not been put in fear by Watkins on the date of the crime, an element essential to conviction under West Virginia law, and that the prosecuting attorney had failed to so inform Watkins. Based on this finding, the district court concluded that the state habeas court had unreasonably applied the principles of Brady v. Maryland, 373 U.S. 83 (1963).

On appeal, the West Virginia officials named in Watkins' habeas petition ("the State") claim that the district court impermissibly found new facts and erred in failing to give the appropriate deference to the state habeas court's factual findings and conclusions of law made with respect to its adjudication of Watkins' Brady claim. We agree and accordingly reverse.

I

A. Underlying Criminal Proceeding

On June 7, 2007, Steven Watkins entered Zimm's Pharmacy in Fayetteville, West Virginia, wearing a hard hat, sunglasses, and a red bandana that masked his face. When Watkins entered the

3

store, only the owner, Mike Zimm, and two female employees were inside. Watkins began to ask Zimm a question, but Zimm could not understand it and asked Watkins to repeat the question. Watkins then "tried to move his mask, or his disguise . . . so that [his speech] wouldn't be muffled as much" and repeated his question, asking Zimm whether he had "pushed the button" to activate the store's security system. Even though he had not done so, Zimm told Watkins that he had in fact activated the system, which prompted Watkins to flee the store and to enter a nearby apartment building.

Watkins was eventually arrested and charged with "attempted robbery in the second degree," in violation of W. Va. Code § 61-2-12(b), which punishes "[a]ny person who . . . attempts to commit robbery by placing the victim in fear of bodily injury."

At Watkins' trial, Zimm testified on behalf of the State and explained how Watkins had placed him in fear of bodily injury:

Q: You indicated that you were fearful of [Watkins]; is that correct?

A: Yes, I was fearful. I didn't know what to expect for me or my employees.

Q: [W]as there anything going on . . . in your business community at this time that triggered that fear . . . ?

* * *

A: Yes, sir. There had been numerous robberies and, just recently before that, there had been a couple

4

robberies in the Beckley area, Raleigh County. . . .
Pharmacies, pharmacists.

*       *       *

Q:   And what thought went through your head when you saw this man approaching you dressed . . . in the manner that you saw that day?

A:   I thought, "It's my turn. They've come to Fayette County." That's what I thought.

Zimm's testimony at trial was consistent with a statement he gave to police officers on the day of the incident. It was also corroborated by the trial testimony of one of the employees in the store who observed Zimm:

Q:   [C]an you tell me what came into your mind as to what was going on at [the time Watkins entered the store]?

A:   Well, at first when he came in and he approached the counter, . . . I at first thought it was a joke, because we have several customers that would do that. And then I realized -- after he had asked [Zimm] about the alarm, [Zimm] had the look of, you know, something's bad, something's going on, and I knew it wasn't a [joke] anymore . . . .

At the conclusion of the State's case, Watkins filed a motion for a judgment of acquittal, arguing that the evidence was insufficient to demonstrate that Zimm had been placed in reasonable fear of bodily injury, but the trial court denied the motion. And during closing argument, both Prosecuting Attorney Brian Parsons and defense counsel James Adkins presented argument with respect to the "fear" element.

5

The jury found Watkins guilty of the offense as charged, and the court sentenced him to a term of imprisonment of between 5 and 18 years. The Supreme Court of Appeals of West Virginia summarily denied Watkins' appeal, and Watkins did not seek review by the Supreme Court of the United States.

B. State Habeas Proceeding

Watkins filed a petition for a writ of habeas corpus in West Virginia state court, claiming, among other things, that he had been denied a fair trial because Prosecuting Attorney Parsons had failed to inform defense counsel Adkins that Zimm had told Parsons that he, Zimm, might not have been afraid of Watkins on the day of the attempted robbery. Watkins claimed that this nondisclosure was a violation of Brady v. Maryland, 373 U.S. 83 (1963), which requires the prosecution, upon request, to provide the accused with evidence favorable to the accused. Specifically, Watkins' petition stated:

> [Defense counsel Adkins] has provided a memorandum to habeas counsel indicating that he was present during a . . . conversation with [Prosecuting Attorney Parsons] who allegedly uttered that the victim, Mike Zimm[,] told him that he was never afraid and [Parsons] responded [that] if that was the case then they should stop prosecuting at that time. If that is true . . . , then the State of West Virginia failed to provide that exculpatory evidence to the defendant herein[, in violation of Brady].

In the State's written response to Watkins' petition, Prosecuting Attorney Parsons admitted that he had had at least

6

two discussions with Zimm before trial about the definition of the "fear" element and exactly what had to be proved at trial. But, as Parsons explained unequivocally:

> Mr. Zimm did not state that he was "never afraid," but rather he sought a better understanding of what fear meant in the context of this case.

Parsons attributed Zimm's questioning to a "certain amount of bravado" that existed in his relationship with Zimm and to the hesitation of one man to acknowledge fear to another.

The state court conducted an evidentiary hearing on Watkins' petition, and defense counsel Adkins testified at the hearing that, at an unrelated court proceeding after Watkins had been convicted, Prosecuting Attorney Parsons stated that Zimm "might not have been scared of Mr. Watkins" at the time of the incident. Specifically, Adkins said:

> Q:   Do you recall . . . what was said at that time?
>
> A.   My contemporaneous note would probably be more accurate than my memory. . . .   [W]e were at another hearing, and <u>Mr. Parsons had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins</u> on . . . the day of the alleged robbery.

(Emphasis added).   Prosecuting Attorney Parsons did not dispute Adkins' testimony.   Rather, in cross-examining Adkins, he obtained Adkins' agreement that Parsons' pretrial discussions with Zimm, during which they discussed the "fear" element, were appropriate:

> Q:   [Y]ou would agree with me that, although the term "fear" or being afraid, has some sort of common sense

7

application or meaning, the term "fear" as it relates to a legal standard of being afraid is something that a person with an education such as Mr. Zimm might have a question about? Is that fair to say?

A: Yes.

Q: [I]sn't it also a fair statement that, if Mr. Zimm was not afraid of Mr. Watkins, there's really no sense in the case being prosecuted? Isn't that a fair way to look at it from the State's perspective?

A: [Yes].

Q: Do you have any problem with an attorney for the State saying to a victim that, "If you're not afraid or you don't feel that you were afraid, you need to tell me and we're not going to take this case forward." Do you have a problem with that question? . . . Do you feel in your professional opinion that that is coaching a witness?

A: No.

After receiving the evidence, the state habeas court denied Watkins' petition, issuing a written opinion that made findings of fact and conclusions of law. The court's relevant findings and conclusions were as follows:

> The Court **FINDS** that, during trial, State witness/victim Mike Zimm testified that he was afraid of [Watkins] based upon what [Watkins] said in Mr. Zimm's store and upon [Watkins'] appearance. Mr. Zimm's trial testimony was consistent with the statement he gave to police at the time of the incident.

> The Court **FINDS** that, at some time after the trial of this matter, [Adkins] was told that Mr. Zimm said he was not "afraid" at the time of the incident at issue. [Parsons] discussed with Mr. Zimm the definition of the word "fear" as it applied to the elements of the crime at issue, and that Mr. Parsons informed Mr. Zimm that if the element of fear did not exist, then the case could not be proven at trial. The discovery

8

provided to the defense did not contain any reference to Mr. Zimm's alleged statement that he was not "afraid" or to the above described conversation between Mr. Parsons and Mr. Zimm.

*     *     *

The Court **CONCLUDES** that the State's alleged failure to inform defense counsel of the conversation between Mr. Parsons and Mr. Zimm regarding the requirement of "fear" did not violate . . . <u>Brady v. Maryland</u>.

Additionally, the Court **CONCLUDES** that Mr. Parsons' statements to Mr. Zimm with regard to the element of "fear" were an accurate way to describe elemental requirements to a lay person/witness and that there is no evidence that Mr. Parsons suggested or improperly influenced Mr. Zimm's testimony.

Watkins appealed the court's ruling to the Supreme Court of Appeals of West Virginia, and that court affirmed, adopting and incorporating the state habeas court's order as its own.

## C. Federal Habeas Proceeding

Finally, Watkins filed a petition for a writ of habeas corpus in the district court, pursuant to 28 U.S.C. § 2254. He again asserted, among other things, that he was "denied his right to Due Process under . . . the United States Constitution when the Prosecution knowingly withheld from him impeachment evidence that was exculpatory," in violation of <u>Brady</u>.

By order dated March 29, 2013, the district court stated that it could not "determine whether the state court improperly found that no <u>Brady</u> violation occurred" because "the state court never made a finding concerning whether or not Zimm stated that

9

he was not in fear on the day of the subject incident." The court accordingly ordered a "plenary evidentiary hearing [to] make an independent factual determination" regarding whether Zimm had made the statement in question to Prosecuting Attorney Parsons before trial. Later, however, the court realized that such an evidentiary hearing would not be consistent with the Supreme Court's holding in Cullen v. Pinholster, 131 S. Ct. 1388 (2011) (holding that federal court "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"), and instead, it simply issued a final order dated March 28, 2014, granting Watkins' petition for a writ of habeas corpus.

In granting Watkins' petition, the court stated:

I found in a prior order that the state habeas court did not find whether Zimm had stated he "was never afraid." However, . . . there is an important distinction between proof of the substance of Zimm's statement and proof that the State admitted that the statement was made. I now **FIND** that the state court found the State had admitted that Zimm made this statement. Put differently, the state court did not find that Zimm said he was not afraid; the state court found that the prosecutor admitted that Zimm said he was not afraid. In light of the clear admission that the State was in possession of Brady material, I also **FIND** the state court unreasonably applied clearly established Supreme Court precedent to the facts.

To support its conclusion, the district court relied on the key factual finding made by the state habeas court. But in doing so, the court assumed facts that supported a Brady violation,

10

whereas the state habeas court had not assumed those facts and found no such violation:

> I now conclude that the state habeas court found that Parsons . . . admitted to Adkins . . . that he, the prosecutor, was in possession of <u>Brady</u> material. I quote from the state court's findings:

>> The Court **FINDS** that, at some time after trial of this matter, trial counsel was told [<u>by the prosecutor</u>] that Mr. Zimm said he was not "afraid" at the time of the incident at issue.

To justify its contrary conclusion, the district court had to assume, making an implied factual finding, that Zimm's statement that he was not "afraid" was imputable to Prosecuting Attorney Parsons <u>before trial</u>. But the state habeas court had found only that the <u>pretrial</u> conversation between Zimm and Prosecuting Attorney Parsons related to a discussion of the "fear" element, and it did not ascribe any particular importance to the <u>post-trial</u> conversation between Prosecuting Attorney Parsons and defense counsel Adkins, where Parsons observed that "Zimm might not have been afraid of Watkins." With this additional implied finding, the district court concluded, "Based on the state court's factual finding and the evidence in the record, it would be 'objectively unreasonable' to conclude that no <u>Brady</u> violation occurred."

The State filed this appeal, contending that the district court failed to give the necessary deference to the factual

11

findings and legal conclusions of the state habeas court, as required by 28 U.S.C. §§ 2254(d) and 2254(e)(1).

II

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To prove a Brady violation, a habeas petitioner must show that the evidence was (1) favorable to him; (2) material; (3) in the possession of the prosecution before trial; and (4) not disclosed to him upon request. See United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001). Stated otherwise, Brady mandates the disclosure of favorable evidence when it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). And, of course, the Supreme Court has made clear that Brady only protects a defendant "before trial" and that "nothing in [its] precedents suggest[s] that [Brady's] disclosure obligation continue[s] after the defendant [is] convicted and the case [is] closed." District Att'y's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 68-69 (2009) (emphasis added).

12

In this case, Watkins contends that Prosecuting Attorney Parsons violated Brady in failing to produce before trial the fact that Zimm had admitted before trial that he was not afraid at the time of the attempted robbery. Of course, if that fact were true, then the information would be favorable to Watkins, and its nondisclosure would support his claim that a Brady violation occurred. But Watkins' claim is not supported by the state habeas record or the state habeas court's findings and conclusions.

Watkins relies entirely on an amorphous statement made by Prosecuting Attorney Parsons to Watkins' defense counsel Adkins after the trial had been completed. The record shows that Prosecuting Attorney Parsons made a post-trial observation to defense counsel Adkins "to the effect that Mr. Zimm might not have been scared of Mr. Watkins" on the day of the attempted robbery. That evidence, however, does not mean that that information or belief was something known to Prosecuting Attorney Parsons before trial. To the contrary, the post-trial observation could have been based on something that some other unidentified person had said to Parsons post-trial, or that Zimm himself might have said to Parsons post-trial, or that amounted to mere retrospective speculation. In any of those circumstances, as well as others, it could not be said that Parsons possessed Brady material.

13

The only evidence of a pretrial conversation between Zimm and Prosecuting Attorney Parsons related to Parsons' explanation to Zimm of what constitutes "fear" and the necessity of proving "fear" as an element of attempted robbery.

The state habeas court found on this record two distinct facts. First, "at some time after the trial of this matter, [defense counsel Adkins] was told that Mr. Zimm said he was not 'afraid' at the time of the incident at issue." And second, that Prosecuting Attorney Parsons had a pretrial conversation with Zimm during which Parsons "discussed with Mr. Zimm the definition of the word 'fear' as it applied to the elements of the crime at issue, and that Mr. Parsons informed Mr. Zimm that if the element of fear did not exist, then the case could not be proven at trial."

The district court, however, failed to accord the appropriate deference to the state habeas court's findings. The district court, which was initially inclined to conduct a plenary evidentiary hearing but ultimately did not do so, nonetheless restated the state habeas court's findings to conclude that Parsons "had admitted that Zimm made the statement [that he was not afraid]," thereby imputing knowledge of Zimm's lack of fear to Parsons before the trial began. The record

14

simply does not support such a leap.* Section 2254 requires a federal court conducting collateral review of a state court adjudication to do so through a "highly deferential lens." DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011); see also 28 U.S.C. § 2254(d). To that end, § 2254(e)(1) instructs the district court to defer to a state court's factual findings:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1) (emphasis added); see also Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006).

---

* The dissenting opinion also fails to recognize that the state habeas court found two distinct conversations. The first conversation that it found consisted of a statement made after trial that Zimm said "he was not 'afraid' at the time of the incident at issue." The second conversation that it found was one between Zimm and Prosecuting Attorney Parsons before trial that explored the definition of the "fear" element. There is no evidence to support a conclusion that the pretrial conversation included a statement by Zimm that he was not afraid, and the state habeas court did not find that the pretrial conversation included such a statement. Indeed, the prosecutor testified affirmatively that Zimm did not make such a statement in that pretrial conversation -- "Mr. Zimm did not state that he was 'never afraid,' but rather he sought a better understanding of what fear meant in the context of this case." The dissent simply conflates the two conversations, as did the district court, concluding without record support, that the post-trial conversation referred to the pretrial conversation and not some other post-trial conversation. The state habeas court found the conversations to be historically and substantively distinct.

15

In the present case, the district court did not find the state habeas court's factual findings "unreasonable . . . in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Nor did the court find that Watkins had rebutted the state habeas court's factual findings with "clear and convincing evidence." § 2254(e)(1). On the contrary, the district court purported to accept the state court's factual findings. See J.A. 402 ("based on the state court's factual finding . . . , it would be 'objectively unreasonable' to conclude . . ."). Yet it nonetheless placed its own gloss upon the state court's factual findings, impermissibly altering them to conclude that Prosecuting Attorney Parsons admitted to having been told by Zimm <u>before trial</u> that he was not afraid of Watkins. The facts in the state court record are to the contrary, and no state habeas court finding can be read to support the district court's conclusion.

We conclude that the state habeas court did not base its decision on "an unreasonable determination of the facts," <u>see</u> 28 U.S.C. § 2254(d)(2), and we note that Watkins did not attempt to rebut the presumption of correctness by "clear and convincing evidence," <u>see</u> § 2254(e)(1). Similarly, we conclude that based on its entirely reasonable factual findings, the state habeas court did not apply the <u>Brady</u> rule in an "objectively unreasonable" manner. <u>See</u> <u>Barnes v. Joyner</u>, 751 F.3d 229, 238-

16

39 (4th Cir. 2014) (holding that the federal court must defer to the state habeas court's legal conclusion, so long as it is not "objectively unreasonable"); § 2254(d)(1). The facts found by the state habeas court do not impute information to Prosecuting Attorney Parsons <u>before trial</u> that Zimm had said he was not afraid. Without such a fact in the record and such a factual finding by the court, there could be no <u>Brady</u> violation.

To be sure, the state habeas court did find that Prosecuting Attorney Parsons and Zimm had had a pretrial discussion about the definition of "fear" and the necessity of proving "fear" at trial. But that conversation was no more than routine trial preparation. As the state habeas court concluded, "Mr. Parsons' statements to Mr. Zimm with regard to the element of 'fear' were an accurate way to describe elemental requirements to a lay person/witness and that there was no evidence that Mr. Parsons suggested or improperly influenced Mr. Zimm's testimony."

The district court's order granting Watkins' petition for a writ of habeas corpus is accordingly

<u>REVERSED</u>.

TRAXLER, Chief Judge, concurring:

I concur in the majority opinion. The West Virginia state court's rejection of Watkins' post-conviction claim -- that the state prosecutor, Brian Parsons, failed to disclose an alleged, exculpatory "lack-of-fear" statement made by the victim, Mike Zimm, in violation of Brady v. Maryland, 373 U.S. 83 (1963) -- was not an unreasonable one in light of the evidence presented in the state court proceedings.

Watkins alleged in his state habeas petition that Parsons told his trial counsel, James Adkins, that Zimm had told Parsons prior to trial that he was not afraid of Watkins during the attempted robbery. In other words, Watkins alleged that Parsons admitted to Adkins after the trial that an exculpatory statement was made by Zimm prior to the trial. In the written response to the petition, Parsons denied Watkins' allegation. Watkins did not call either Zimm or Parsons as a witness at the evidentiary hearing in state court. Watkins called Adkins as his sole witness, but Adkins did not testify that Parsons admitted to him that Zimm made the alleged Brady statement prior to trial or, for that matter, after trial. In sum, Watkins failed to elicit testimony or present other evidence that supported his Brady allegation.

After the hearing, the state court issued a 17-page written opinion addressing Watkins' habeas claims, including his Brady

18

claim.  The opinion contains explicit factual findings and conclusions.  But not surprisingly, the state court did not find that Zimm made the alleged Brady statement to Parsons.  The state court did not find that Parsons admitted to Adkins that Zimm made the alleged Brady statement to him.  And the state court did not find that Parsons had knowledge of any such Brady statement prior to Watkins' trial.  Consequently, the state court did not address the question of whether the alleged but unproven statement would have been material for Brady purposes if Zimm had made it prior to trial.

On federal habeas review, we are not at liberty to rewrite state court findings of fact, or imply additional ones, in a manner that is unsupported by the evidence in the state court record and inconsistent with the state court's reasonable rejection of a constitutional claim.  We must give deference to the state court's ultimate and reasonable adjudication of the claim, and we must give the state court the benefit of the doubt when doing so.  In this case, that deference is easily given.  The state court did not find the existence of a Brady statement and the record does not compel that we do so.

I.  The State Habeas Proceedings

A.  The State Habeas Allegations

In his state habeas petition, Watkins alleged the following claim as his eleventh ground for relief:

19

> [T]he State of West Virginia failed to inform the Defendant that the prosecuting witness/alleged victim [Zimm] had told them that he was not afraid of the Defendant.

J.A. 181. Elaborating upon the basis for this allegation, Watkins represented that his trial counsel, James Adkins, had:

> provided a memorandum to [state] habeas counsel indicating that he was present during a pre-hearing conversation with the Assistant Prosecuting Attorney who tried th[e] case <u>who allegedly uttered that the victim, Mike Zimm told him that he was never afraid</u> and the APA responded if that was the case then they should stop prosecuting at that time.

<u>Id.</u> (emphasis added). "If that is true and the case," Watkins asserted, "then the State of West Virginia failed to provide that exculpatory evidence to [him]." <u>Id.</u>

In its written response to Watkins' habeas petition, the state agreed that APA Parsons had discussed with Zimm prior to trial the element of fear necessary to obtain a conviction for attempted robbery under state law, but denied that Zimm made the alleged exculpatory lack-of-fear statement to Parsons during that pretrial discussion. According to Parsons' response:

> [I] spoke with . . . Mr. Zimm on at least two occasions prior to the trial of the matter . . . as a part of the trial preparation process. I recall having a conversation with Mr. Zimm about the definition of the word "fear" as it applied to the legal elements requiring proof in the trial of the respondent. <u>Mr. Zimm did not state that he was "never afraid"</u>, but rather he sought a better understanding of what fear meant in the context of this case. (The Court should understand that a certain amount of bravado existed as to the relationship between counsel and Mr. Zimm and a reluctance to express fear months

20

after an incident is natural between two men.) I did, however, inform Mr. Zimm that if the element of fear did not exist the case could not be proven at trial. I believe this to be an accurate statement of the law and at no time did counsel pressure, suggest or influence Mr. Zimm to testify one way or the other. Mr. Zimm's trial testimony was consistent with his statement given the day of the crime and in no way exculpatory.

J.A. 303-04 (emphasis added). Parsons' written account of this pretrial conversation, including his explicit denial that Zimm told him during that conversation that he was not afraid at the time of the attempted robbery, is uncontroverted.

### B. The Omnibus Evidentiary Hearing

The state habeas court held an omnibus evidentiary hearing, providing Watkins the opportunity to prove his allegation. Watkins did not do so.

Watkins did not call Zimm or Parsons as a witness to substantiate his allegation that Zimm made the lack-of-fear statement to Parsons prior to trial. As a result, the state court did not hear from the only two witnesses who had first-hand knowledge of the pretrial conversation that had taken place between them.

Watkins did call his trial counsel Adkins as a witness, presumably to substantiate his allegation that Adkins had "provided a memorandum to [state] habeas counsel indicating that he was present during a pre-hearing conversation with [Parsons] . . . who allegedly uttered that [Zimm] told him that he was

21

never afraid." J.A. 181. But Adkins did not do so. Adkins'
testimony regarding the issue was as follows:

> Q: [by State Habeas Counsel]. [W]e have a contention
> in . . . this habeas proceeding, whereby it's <u>alleged</u>
> that Mr. Parsons made some comments to the effect that
> Mr. Zimm had told him that he wasn't afraid during
> this whole incident. Were you ever present when Mr.
> Parsons spoke about that?
>
> . . . .
>
> A: <u>I don't recall that</u>.
>
> Q: Were you ever present in Judge Hatcher's
> courtroom at a time when it was perhaps yourself, Mr.
> Parsons, Mallory – I think her name was Farris – the
> court reporter, and a client of yours named Grasty
> when Mr. Parsons suggested that Mr. Zimm had told him
> he wasn't afraid of Mr. Watkins?
>
> A: I believe so, and I believe I may have made a
> <u>contemporaneous note</u> and either placed it in the file
> or . . . I think I might have given it to you.
>
> Q: Yes, sir. Do you recall what that -- what was
> said at that time?
>
> A: My contemporaneous note would probably be more
> accurate than my memory.
>
> Q: Okay. Do you have any <u>independent recollection</u>
> of that conversation?
>
> A: Something to the effect that -- something to the
> effect that -- yes, we were at another hearing, and
> <u>Mr. Parsons had stated something to the effect that</u>
> <u>Mr. Zimm might not have been scared of Mr. Watkins</u> on
> that -- on the date of the alleged robbery.
>
> Q: Is that what Mr. Parsons -- as far as you recall,
> -- you said your recollection was fuzzy on some of
> this, but as far as you recall, is that what was said?
>
> A: Like I said, I believe I made a contemporaneous
> note and retained a copy in my file. And I think when

22

I was aware that you were handling this on a habeas, I think I might have provided you with a copy of it.

Q: Do you recall who was present at the time that it was stated?

A: Other than me and Mr. Parsons, no.

Q: Did you -- do you recall responding at that time? Did you say anything?

A: No. I was out of the case at that point in time.

J.A. 194-96 (emphasis added). Watkins did not call any of the other persons who were present during this post-trial conversation, and he did not introduce into evidence the "contemporaneous note" that Adkins repeatedly referenced during his testimony.[1]

---

[1] As discussed in more detail below, Watkins plainly misrepresented the substance of Adkins' state court testimony during the federal habeas proceedings. In addition, Watkins attached to his pro se federal habeas petition a typewritten note that he now represents to be the "contemporaneous note" mentioned by Adkins. This note references "chatter" amongst the various persons during a sentencing hearing for an unrelated defendant that occurred on April 1, 2008. We cannot know whether the "contemporaneous note" that surfaced during these federal habeas proceedings is the "contemporaneous note" that Adkins referenced in his testimony. The place and time to determine that was during the state court proceedings. But even if we were to consider the note, it would create more problems for Watkins. The note that Watkins chose not to show to the state habeas court, but now urges us to see, dates the conversation as having occurred on April 1, 2008, after Watkins' trial but prior to his sentencing. Adkins was not "out of the case" at that time, J.A. 196, and he would have necessarily been aware of any alleged, exculpatory statement prior to the conclusion of the state trial proceedings. In other words, Watkins' Brady claim would most likely be procedurally barred, see W. Va. Code § 53-4A-1(c), which may well explain why state
(Continued)

Accordingly, the evidence presented in the state court proceeding in support of Watkins' "lack-of-fear" claim consisted of: (1) Parsons' agreement (in the written response) that he had a pretrial conversation with Zimm about the element of fear that did not include the alleged lack-of-fear statement by Zimm; (2) Adkins' testimony that he did not recall Parsons making "comments to the effect that Mr. Zimm had told him that he wasn't afraid during th[e] incident," J.A. 194; and (3) Adkins' sole "independent recollection of that conversation," which was that Parsons "had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins . . . on the date of the alleged robbery," J.A. 195, which is more opinion than fact and says nothing about when Parsons developed this belief.[2]

---

habeas counsel did not produce the note during the state habeas proceedings despite Adkins' repeated references to it.

[2] Watkins' state habeas counsel might well have been concerned about his ability to prove the existence of the alleged lack-of-fear statement from the inception of the evidentiary hearing. Prior to presenting Adkins' testimony, Watkins' counsel had instead described the eleventh claim as one involving alleged improper "coaching" of the witness. See J.A. 191 (advising the state habeas court that the "eleventh contention involves an allegation that Mr. Parsons essentially coached Mike Zimm, the prime witness and alleged victim in this matter"). However, Adkins also provided no evidentiary support for this more-recent claim. On cross-examination by the state, Adkins testified that he did not "have any problem with an attorney for the State saying to a victim that, 'If you're not afraid or you don't feel that you were afraid, you need to tell me and we're not going to take this case forward,'" and that he
(Continued)

## C.  The State Habeas Decision

In its decision denying habeas relief, the state court made the following findings of fact:

> (1)  "[D]uring trial, [Mr. Zimm] testified that he was afraid of the petitioner based upon what the petitioner said in Mr. Zimm's store and upon the petitioner's appearance."

> (2)  "Mr. Zimm's trial testimony was consistent with the statement he gave to police at the time of the incident."

> (3)  "[A]t some time after the trial of this matter, trial counsel was told that Mr. Zimm said he was not 'afraid' at the time of the incident at issue.

> (4)  "Assistant Prosecuting Attorney Brian Parsons, esq. discussed with Mr. Zimm the definition of the word 'fear' as it applied to the elements of the crime at issue, and that Mr. Parsons informed Mr. Zimm that if the element of fear did not exist, then the case could not be proven at trial.

> (5)  "The discovery provided to the defense did not contain any reference to Mr. Zimm's alleged statement that he was not 'afraid' or to the above described conversation between Mr. Parsons and Mr. Zimm."

J.A. 211 (emphasis added).

With regard to Zimm's alleged "lack-of-fear" statement, therefore, the state court did not find that Zimm "had told [Parsons] that he was not afraid of the Defendant," as Watkins had alleged.  J.A. 181.  Nor did it find that Adkins overheard Parsons "utter[] that . . . Zimm told him that he was never

---

did not "feel in [his] professional opinion that that is coaching a witness."  J.A. 201.

25

afraid," as Watkins had also alleged. J.A. 181. The evidence presented at the hearing did not warrant either finding.

With regard to the element-of-fear conversation that Parsons agreed had taken place between him and Zimm, the state court's description of that conversation likewise did not include a finding that Zimm's alleged lack-of-fear statement was a part of it. Moreover, the state court continued to draw quite an important distinction between the two things. Although the court referred to the element-of-fear conversation as the conversation that it had just described, the court continued to refer to the alleged, lack-of-fear statement as just that -- an allegation.

The state court's conclusions of law also do not indicate that the state court implicitly found that the pretrial conversation included the alleged lack-of-fear statement.

> (1) "The Court CONCLUDES that the State has an obligation to disclose to the defendant favorable impeachment or exculpatory [evidence] that is within its knowledge."

> (2) "The Court CONCLUDES that the State's alleged failure to inform defense counsel of the conversation between Mr. Parsons and Mr. Zimm regarding the requirement of 'fear' did not violate the dictates of Brady v. Maryland."

> (3) "Additionally, the Court CONCLUDES that Mr. Parson's statements to Mr. Zimm with regard to the element of 'fear' were an accurate way to describe elemental requirements to a lay person/witness and that there is no evidence that Mr. Parsons suggested or improperly influenced Mr. Zimm's testimony."

26

J.A. 213-14 (emphasis added).  Thus, the state court -- having not found that Zimm made the alleged, exculpatory lack-of-fear statement to Parsons prior to trial, or that the alleged statement was within Parsons' knowledge prior to trial -- only addressed Watkins' more-recently raised claim that Brady required Parsons to disclose the pretrial element-of-fear conversation that Parsons had described in the state's response. The state court closely reiterated Parsons' uncontroverted account of that conversation and reasonably concluded that "there [was] no evidence that Mr. Parsons suggested or improperly influenced Mr. Zimm's testimony" during it.  J.A. 214.[3]

---

[3] The dissent acknowledges that the state habeas court's "very wording closely mirrors that of the prosecutor's response to the habeas petition," but does so as support for its view that the state court must have "accepted and adopted Prosecutor Parson's uncontroverted account as to the timing of the alleged fear statement."  Dissent at 5 (emphasis added).  But this focus on timing obfuscates the actual deficit in Watkins' proof, and confuses Watkins' allegation regarding Zimm's alleged "lack-of-fear" statement with Parsons' acknowledgment that he had a conversation with Zimm about the requirement of fear that did not include any such statement by Zimm.  Obviously, the timing of the pretrial conversation between Parsons and Zimm, which served as the basis for Watkins' "coaching" allegation, is not in dispute.  But the existence of Zimm's alleged "fear statement" during the pretrial conversation has always been in dispute.  The dissent persists in conflating the two things, even though the state court never did.  Thus, I agree that the state habeas court appears to have "accepted and adopted Prosecutor Parsons uncontroverted account" of the pretrial conversation.  Id.  Indeed, it is the only account of that conversation, because Watkins chose not to explore it or offer
(Continued)

27

II.

A.

Under the familiar principles of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant federal habeas relief from a state court conviction unless the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or "a decision that was contrary to, or an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1), (2). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Here, Watkins has not rebutted the state court's factual findings, as written, by clear and convincing evidence. Nor does he assert that the state court's denial of his Brady claim was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

---

any other evidence about it. However, we cannot ignore the fact that this same "uncontroverted account" by Parsons of the pretrial conversation includes Parsons' explicit denial that Zimm made the alleged lack-of-fear statement during it.

28

Instead, he contends that we should imply a critical finding of fact based upon evidence that he failed to present in the state court proceeding -- a finding that the state court clearly declined to make and that would be inconsistent with the state court's reasonable adjudication of his Brady claim. AEDPA deference does not allow us to do so.

"By its plain terms, § 2254(d)(2) limits our review to the evidence placed before the state PCR court." Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) (emphasis added); see also Cullen v. Pinholster, 131 S. Ct. 1388, 1400 n.7 (2011). Accordingly, "[w]e consider whether the state PCR court based its decisions 'on an objectively unreasonable factual determination in view of the evidence before it, bearing in mind that factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Elmore, 661 F.3d at 850 (quoting Baum v. Rushton, 572 F.3d 198, 210 (4th Cir. 2009)). Under these highly deferential standards, we must also give the state court decision "the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013); Elmore, 661 F.3d at 850.

In some situations, AEDPA deference allows federal courts to infer from the state court's "explicit factual findings and conclusion[s] implied factual findings that are consistent with its judgment although unstated." Hightower v. Terry, 459 F.3d

1067, 1072 n.9 (11th Cir. 2006) (emphasis added); see Marshall v. Lonberger, 459 U.S. 422, 433 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the applicant's claim); LaVallee v. Delle Rose, 410 U.S. 690, 692 (1973) (per curiam) (same); Lee v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172, 1213 (11th Cir. 2013) ("[W]e afford AEDPA deference even where the state court's decision is a summary adjudication or engages in only some evaluation because 'implicit findings' may be inferred from dispositive rulings." (emphasis added)); Blankenship v. Hall, 542 F.3d 1253, 1272 (11th Cir. 2008) ("We have previously recognized a state court's dispositive ruling may contain implicit findings, which, though unstated, are necessary to that ruling." (internal quotation marks omitted)(emphasis added)); Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2579 (3d ed. 2004) ("In some cases if the court fails to make a finding on a particular fact it has been assumed that it found against the party carrying the burden of persuasion on that fact or that it impliedly made a

finding consistent with its general disposition of the case.") (footnotes omitted).

"In such cases, we make the common sense judgment that material factual issues were resolved by the [state] court in favor of the judgment when it was reasonable for that court to have done so in light of the evidence." <u>Hightower</u>, 459 F.3d at 1072 n.9 (original alterations and internal quotation marks omitted); <u>see also</u> <u>Marshall</u>, 459 U.S. at 433 (Where "it was clear under the applicable federal law that the [state] court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant relief was tantamount to an express finding against the . . . defendant."); <u>LaVallee</u>, 410 U.S. at 695 (same).[4]

---

[4] The dissent asserts that this "is simply not the law," but points us to no contrary authority. Dissent at 13. In none of the cases cited by the dissent did the court imply an inconsistent finding of fact, afford it a presumption of correctness, and place the burden upon the state to rebut it. On the contrary, the <u>Blankenship</u> decision, which is also relied upon by the dissent, made it clear that a state court's "'dispositive ruling may contain implicit findings, which, though unstated, are <u>necessary</u> to that ruling.'" <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1272 (11th Cir. 2008) (emphasis added). Such "necessary" findings "can be inferred from its opinion and the record," and they "are entitled to deference under § 2254(d) to the same extent as explicit findings of fact." <u>Id.</u> But nowhere did the <u>Blankenship</u> court indicate that inconsistent, and by definition unnecessary, state court findings of fact can be inferred based upon our interpretation of an explicit factual finding or the state court record. Moreover, "while state court findings of fact can be implied" from the state court's dispositive ruling, "'they cannot be imagined from thin air.'" (Continued)

31

Here, however, Watkins urges us to do the opposite. Watkins contends that he is entitled to federal habeas relief from his state court conviction because the state habeas court, in the course of denying his Brady claim, found that "at some time after the trial of this matter, trial counsel was told that Mr. Zimm said he was not 'afraid' at the time of the incident at issue." J.A. 211 (emphasis added). But instead of having us interpret that single finding of fact in a manner consistent with the state court's other findings and conclusions, as well as its reasonable disposition of the claim in light of the evidence presented, Watkins urges us to rewrite and add to the finding in a manner that is inconsistent with them.

Specifically, Watkins contends that the state court meant to find, or impliedly found, instead, that "at some time after the trial of this matter, trial counsel was told [by Parsons] that Mr. Zimm said [to Parsons] that he was not afraid at the time of the incident," and that Zimm said this to Parsons prior to Watkins' trial. To be sure, these additions to the state court's actual finding of fact are critical to any plausible claim on Watkins' part that a Brady violation occurred. But we

Id. at 1272 n.5 (quoting Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992)). That is precisely what the district court and the dissent would have us do here. Neither points to evidence that Parsons admitted to Adkins that Zimm made the exculpatory statement to him, because it does not exist.

32

cannot simply ignore the fact that the state court did <u>not</u> make them or that, based upon the evidence presented, the state court reasonably denied the <u>Brady</u> claim instead. Indeed, I do not see how it had any other choice.

The state court did not find that Zimm made an exculpatory statement to Parsons prior to trial. The state court did not find that Parsons admitted to Adkins that Zimm made an exculpatory statement to him prior to trial. And, of course, the state court did not find that Parsons or the state had <u>knowledge</u> of any exculpatory statement by Zimm prior to trial. Watkins does not point to any evidence that would directly support, much less compel, these modifications to the state court's findings of fact. Instead, he contends that we should include them because the <u>state</u> did not produce evidence that someone <u>other</u> than Parsons told Adkins that Zimm made the alleged, exculpatory statement, and because the <u>state</u> did not produce evidence that Zimm made the alleged, exculpatory statement <u>after</u> the trial. This reasoning not only impermissibly reverses the burden of proof from Watkins to the state to disprove his allegation, it turns AEDPA deference on its head.

B.

Although I cannot know precisely why the state habeas court phrased this single factual finding in the manner that it did,

33

it is still entitled to a presumption of correctness, and the state court's decision on the merits of the Brady claim may not be set aside unless it is an unreasonable one in light of the evidence that was presented to the state court. One need only read Adkins' brief testimony about the whole matter to conclude that it is not.

Frankly, if I had been the state court judge, I would not have found that anyone told Adkins that Zimm said to anyone at any time that he was not afraid during the attempted robbery. But I am not the finder of fact. My obligation is to give deference to the state court's reasonable adjudication of the constitutional claim in light of the evidence presented to it, and to give the state court the benefit of the doubt when doing so.

That said, there could be any number of reasonable explanations for why the state court penned this single finding as it did. Maybe the state court simply made a mistake. Or maybe the state court meant to say exactly what it did and nothing more. The state court record suggests that there were other persons present during the post-trial conversation, Adkins' memory of the conversation was admittedly "fuzzy," and Adkins was not allowed to refresh his memory with the contemporaneous note to which he persistently referred. J.A. 195. As the finding is written, therefore, the state court

34

might well have decided to give state habeas counsel the benefit of the doubt as to whether the Brady allegation had been made in good faith, deserving of the evidentiary hearing that was provided to Watkins to prove the claim. But it would not have made a finding that was inconsistent with the balance of its other findings and conclusions, unsupported by the evidence that Watkins brought forth to support the allegation, or inconsistent with its eminently reasonable decision to deny Watkins' Brady claim based upon that evidence

The line of cases relied upon by the dissent also would not allow us to translate a single, ambiguous finding of fact, or even a mistaken one, into an inconsistent one that is not supported by the evidence, in order to upset the state court's reasonable rejection of the constitutional claim. See, e.g., Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir. 2006) (noting that "'[t]he statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning'" (quoting Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (emphasis added)); see also Santellan, 271 F.3d at 193 ("[E]ven where a state court [has] made a mistake, . . . 'we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers.'") (quoting Cruz v. Miller, 255 F.3d 77, 86 (2d Cir. 2001) (second alteration in original); Cruz, 255 F.3d at 86 ("Although sound

reasoning will enhance the likelihood that a state court's ruling will be determined to be a reasonable application of Supreme Court law, deficient reasoning will not preclude AEDPA deference, at least in the absence of an analysis so flawed as to undermine confidence that the constitutional claim has been fairly adjudicated." (internal quotation marks and citations omitted)).

In the end, however, my interpretation of the state court's explicit finding of fact is irrelevant, for I am not at liberty to pick it apart or rewrite it in the light most favorable to Watkins. See, e.g., Wainwright v. Goode, 464 U.S. 78, 85 (1983) (per curiam) (holding that where the state court "record [wa]s ambiguous," "the Court of Appeals erred in substituting its view of the facts for that of the [state court]"; Palmer v. Estelle, 985 F.2d 456, 459 (9th Cir. 1993) ("Where the record is ambiguous, [the state] court's factual findings are deemed to be 'fairly supported by the record.'" (quoting Wainwright, 464 U.S. at 85). Watkins bore the burden of presenting clear and convincing evidence that the state habeas court's factual finding, as written, was not entitled to the presumption of correctness that AEDPA grants it. He has not done so. Even if he had, he would only have shown that this single factual finding was either incorrect or incomplete, neither of which would compel us to replace it with a factual finding that is

36

unsupported by the evidence and inconsistent with the state court's decision. Watkins was required to show that the state court's ultimate rejection of his Brady claim was an unreasonable one in light of the evidence presented to the state court, see Winston v. Kelly, 592 F.3d 535, 555 (4th Cir. 2010), and this he cannot do.

### III. The Federal Habeas Proceedings

I turn now to the district court's decision, and the troubling factual misrepresentations that Watkins made to it about the evidence of record.

### A.

From the outset, Watkins represented to the district court in his § 2254 petition that Adkins "testified that he heard Prosecutor Parsons say (at an unrelated hearing) that at some point before trial the alleged victim, Mike Zimm, told him that he was not afraid on the day in question." J.A. 235. That is untrue.

Watkins then proceeded to further supplement Adkins' actual testimony with testimony that he wishes Adkins had given. According to Watkins:

> At some point after the trial, [Adkins] was present at an unrelated hearing where [Parsons] was also present. At the unrelated hearing, Adkins heard Brian Parsons say that at some point before Watkins' trial he met with the alleged victim, Mike Zimm, and during that meeting Zimm told Parsons that he was not in fear the day Watkins came to his store. Parsons, in the

37

presence of Jim Adkins, then admitted that he then told Zimm that if he wasn't in fear that day, then it was pointless to pursue the case as a robbery. Mr. Zimm's statement at that meeting with [P]arsons was the opposite of what he testified to at Watkins' trial.

. . . .

At Watkins' Omnibus Habeas Corpus Hearing, Mr. Adkins did testify to all of this, and then gave his professional assessment that if he had known about Zimm's contradictory statements before trial, it would have potentially affected the outcome. . . .

Mr. Parsons does not deny that such a conversation between he and Mr. Zimm took place. In fact, he admits to it in the State's Response to Watkins' Petition.

J.A. 239-40. Again, this is untrue. If Adkins had actually "testif[ied] to all of this," id. at 240, Watkins might well have had a plausible Brady argument. But Adkins did not.

Watkins' summary is no mere "overstate[ment]" of "the strength of Adkins' testimony." Dissent at 8. It is created out of whole cloth. Adkins did not testify that Parsons told him anything about his pretrial conversation with Zimm, much less that Parsons admitted to him that Zimm made an exculpatory statement. Instead, Watkins took selected portions of Parsons' response to the state habeas petition, and put them into the mouth of Adkins – except, of course, that most important portion where Parsons denied that Zimm made the alleged, exculpatory statement to him. Parsons did not deny having a pretrial conversation with Zimm about the element of fear, but he most

38

certainly did "deny that such . . . conversation" included a "contradictory statement" by Zimm that "he was not in fear the day Watkins came to his store." J.A. 240.

Unfortunately, the district court appears to have accepted Watkins' unsubstantiated factual narrative. It likewise erroneously recounted Adkins' testimony as follows:

> During the [omnibus evidentiary] hearing, James Adkins, the petitioner's trial lawyer, <u>testified</u> that, at an unrelated hearing after the petitioner's trial, he overheard Brian Parsons, the prosecutor at the petitioner's trial, describe a conversation he had with Zimm before the petitioner's trial. In Adkins's presence, prosecutor Parsons stated that Zimm told him during this pretrial conversation that he had not been in fear on the day the petitioner entered his store. According to Adkins, the prosecutor said that his response to Zimm was that if he was not in fear, the case for attempted robbery could not proceed. Adkins made a contemporaneous note of the conversation. Although the note was not admitted into evidence, its substance was discussed during the hearing and in the parties' briefing.

J.A. 391 (emphasis added). Again, no such testimony by Adkins exists, and neither the "contemporaneous note" nor anyone's summary of it was introduced into evidence before the state court.

Proceeding from this incorrect evidentiary premise from the outset, the district court found that "[t]here [was] no evidence to controvert" Adkins' nonexistent testimony, and it rewrote the state court's factual finding into the one that Watkins wanted:

> "[A]t some time after the trial of this matter, trial counsel was told [by the prosecutor] that Mr. Zimm

39

said he was not 'afraid' at the time of the incident at issue."

J.A. 396 (alteration of state court finding in original) (emphasis added). Having made this unsubstantiated factual finding that Parsons admitted to Adkins that he had knowledge of the alleged Brady statement, and operating under the additional, assumption that Parsons had knowledge of it prior to trial, the district court was then in a position to conclude that the state court's denial of relief in light of these implied findings was unreasonable under 28 U.S.C. § 2254(d)(1). This was error.

The district court's extraordinary steps to its grant of federal habeas relief have gone far afield from the "evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), and give inadequate deference to the state court's reasonable adjudication of Watkins' Brady claim in light of that evidence.

### B.

On appeal, the dissent has similarly stretched Adkins' testimony into a version that does not exist. According to the dissent, "Adkins identified Parsons, and only Parsons, as the person who told him about Zimm's alleged lack-of-fear statement." Dissent at 9. But in actuality Adkins did not identify Parsons even once as a person who told him after trial that Zimm had said he was not afraid during the crime.

40

Simply put, Adkins was the only witness that Watkins called to substantiate his allegation, and Adkins did not do so. There is no need for us to interpret or add to Adkins' testimony. Nor is it within our province to do so. Adkins' testimony speaks for itself.

When Adkins was explicitly questioned about Watkins' Brady allegation, he testified that he did not recall Parsons "ma[king] comments to the effect that Mr. Zimm told him that he wasn't afraid during this whole incident." J.A. 194. When pressed by state habeas counsel, Adkins testified that he "believe[d] he recalled a conversation that took place after Watkins' trial and that he "may have made a contemporaneous note" of the substance of that conversation. Id. But Adkins never agreed with state habeas counsel's leading statement that during this conversation "'Parsons suggested that Mr. Zimm had told him that he wasn't afraid of Mr. Watkins.'" Dissent at 9. Rather, Adkins immediately and repeatedly referred to the contemporaneous note that he believed he had given to state habeas counsel and he all but asked counsel to produce it to him.

When Watkins' counsel instead asked Adkins to put in his own words his "independent recollection of that conversation," Adkins did not testify that Parsons "suggested that Mr. Zimm had told him he wasn't afraid of Mr. Watkins." J.A. 194-95. And he

41

did not identify Parsons even once as a person who told him that Zimm had said that he was not afraid during the attempted robbery.  On the contrary, Adkins testified, and only testified, to his "independent recollection" and in his own words, that "Parsons had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins on . . . the date of the alleged robbery[,]" J.A. 195 (emphasis added), which is more opinion than fact and offers nothing in the way of when or why Parsons developed this belief about Zimm.

Interestingly, the dissent seemingly acknowledges Watkins' failure of proof, as it too points to no testimony that would support the district court's implied factual finding that Parsons admitted to Adkins that Zimm told Parsons that he was not afraid of Watkins at the time of the robbery.[5]  Instead, the dissent focuses upon the state's case, faulting Parsons for not denying Watkins' allegations in the way it believes he should have and criticizing the state for putting up what it deems to

---

[5]  In fact, the dissent acknowledges that "Adkins used qualifying words and equivocal phrases about what, precisely, he heard, and suggested that his 'contemporaneous note would probably be more accurate than [his] memory,'" Dissent at 8-9 (quoting J.A. 195) (emphasis and alteration in original), but this only highlights the point.  Adkins simply did not provide the requisite support for Watkins' allegation that "he was present during a pre-hearing conversation with [Parsons] who allegedly uttered that [Zimm] told him that he was never afraid." J.A. 181.

42

have been a "lackluster showing" at the state evidentiary hearing. Dissent at 10 n.2.

For example, the dissent criticizes Parsons for not "challeng[ing] Adkins' recollection of his post-trial conversation with Parsons" and for not "suggest[ing] that Zimm could have made the alleged statement after trial." Dissent at 5. But, of course, this was not the state's burden to bear and the state had no obligation to make any showing at the state evidentiary hearing. It was Watkins' burden to prove that Zimm made the alleged, exculpatory statement, that he made it to Parsons, and that he made it prior to trial. He did not. Watkins chose not to call Zimm or Parsons as a witness to explore their pretrial conversations. Watkins chose to call Adkins to prove his claim, but Adkins' memory did not allow him to serve that role and Watkins did not produce Adkins' contemporaneous note to refresh his memory.

Indeed, why would Parsons have felt the need to challenge Adkins' recollection of the post-trial conversation? And why would he have endeavored to find and present evidence that Zimm made the alleged "lack-of-fear" statement after trial or to someone else? Parsons had already denied that Zimm made the alleged Brady statement to him and Adkins had not contradicted this denial with testimony that Parsons had admitted to him that the exculpatory statement was made. Little wonder, therefore,

43

that the state court did not find that Zimm made the alleged statement to Parsons, did not find that Zimm made the alleged statement to anyone else, and did not find that Parsons told Adkins about the alleged statement.

The dissent likewise criticizes the manner in which Parsons denied Watkins' allegation in the state's response to Watkins' state habeas petition. Although the dissent admits that Parsons denied Watkins' allegation, it urges us to brush this inconvenient fact aside as well because, in its opinion, Parsons "had every reason to minimize Zimm's 'lack-of-fear' during the robbery." Dissent at 10. But the dissent points to nothing in the record that supports this assumption about Parsons' motives, much less its implied finding that the state court was of this unspoken view as well.

The dissent also creates a host of additional implied findings pertaining to Parsons' denial. The dissent has decided that "Parsons attempted to finesse exactly what witness Zimm said at their pre-trial meetings," that he "parsed and qualified their exchanges" during these meetings, and that he intentionally "le[ft] open the possibility that Zimm did say something short of never being afraid but still not amounting to the required not in 'fear of bodily injury.'" Dissent at 11. Again, there is nothing in the record to support these

44

accusations against Parsons, and the state court certainly did not make any such adverse credibility findings against him.

In effect, the dissent faults Parsons for not explicitly denying an endless variety of unspoken but theoretically possible variations of the allegation that Watkins made and that Parsons denied, all the while ignoring the fact that Watkins could have explored any such suspicions about Parsons' response at the evidentiary hearing. Parsons did not choose the words that comprised the allegation against him. Watkins did. And I certainly cannot fault Parsons for phrasing his denial of Watkins' accusation by using the same accusatory words that were used against him.[6]

In any event, such speculation about prosecutorial motives during the pleading stage is misplaced given our deferential standard of review and Watkins' clear failure to prove his allegation. The question is whether the state court's decision to reject Watkins' <u>Brady</u> claim was an unreasonable one in light of the evidence that Watkins presented in support of it. Watkins cannot excuse his failure of proof by relying upon an

---

[6] To the extent there is any confusion, the only "written statement [submitted] to the state habeas court," Dissent at 11, was the state's response to Watkins' habeas petition, denying Watkins' sole claim that Zimm had made the alleged "lack-of-fear" statement prior to trial. Those pleadings, of course, provide no basis for the implication that Parsons was engaged in such word-play on the day of the evidentiary hearing.

45

alleged "lackluster showing" by the state, nor can we. Dissent at 10 n.2. All agree that Watkins' sole allegation in his petition was that Zimm told Parsons prior to trial that he was "never afraid," J.A. 181, and all agree that Parsons denied Watkins' allegation. As the dissent also acknowledges, Parsons was in the courtroom. Watkins could have called Parsons as a witness to ask him, for example, whether Zimm "sa[id] something short of never being afraid." Dissent at 11. More simply, Watkins could have just asked Parsons what Zimm said to him. Watkins also could have called Zimm as a witness and asked Zimm what he said to Parsons. In short, Watkins was provided a full opportunity to explore any and all pre-trial conversations between Zimm and Parsons. Instead, Watkins did nothing, and now wags his finger at the state for not disproving his unproven allegation.[7]

---

[7] As noted earlier, on the morning of the state evidentiary hearing, Watkins changed the focus of his Brady claim from the alleged "lack-of-fear" statement by Zimm (which was alleged in the petition) to the "coaching" allegation against Parsons (which was grounded in Parsons' response to the petition). On cross-examination by the state, however, Adkins equally failed to support this newly-raised claim and it too was rejected by the state court.

On federal habeas review, Watkins has attempted to change the focus back to his original allegation. But in order to do so, he falsely represented Adkins' testimony to the district court and attempted to introduce for the first time the alleged "contemporaneous note" authored by Adkins. That note, however, contradicts Adkins' testimony that he was "out of the case" at the time of this alleged "post-trial" conversation between him (Continued)

46

C.

To conclude, Watkins' arguments are plentiful, but they are based upon summaries of evidence that does not exist. The district court's implied finding that Parsons admitted the Brady violation to Adkins is likewise built upon nonexistent evidence and supposition. Parsons did not agree in the state's response to Watkins' state habeas petition that Zimm made the alleged exculpatory statement during their pretrial conversation. Watkins points to no testimony by Adkins that Parsons admitted that Zimm made the alleged exculpatory statement to him prior to trial. The state court did not find that Parsons admitted to Adkins that Zimm made the exculpatory statement, and the evidence presented in the state court proceeding does not require us to imply a finding that would be contrary to the state court's reasonable adjudication of this claim. Even if I were at liberty to review Watkins' state habeas petition de novo, I could find no basis upon which to grant relief on this

---

and Parsons, and places it as having instead occurred prior to the conclusion of the trial proceedings. By withholding the note from the state court, Watkins deprived the state court of the ability to address not only the substantive content of the note but also the procedural implications that stem from it. Hardly a better case could be made for why we must defer to the state habeas court's reasonable rejection of Watkins' claim in light of the evidence that was presented to it.

record.  I certainly cannot say that the state court's decision

to deny relief was an unreasonable one.[8]

<hr>

[8] On appeal, the dissent seeks to write into the state court's decision yet another implied finding, <u>i.e.</u>, that the alleged, exculpatory statement was <u>not</u> material.  I do not concede that the alleged but unproven statement by Zimm would have been material under <u>Brady</u> if there was evidence that he actually said it, much less that the state court would have been unreasonable under AEDPA's deferential standard of review if it had found that the statement was not material.  The state court never found that Zimm made the alleged statement, or that Parsons had knowledge of any such statement prior to Watkins' trial, or that Parsons failed to disclose any exculpatory evidence to Watkins in a timely manner.  Consequently, it had no reason to address materiality and it did not make any such materiality finding.

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

With respect, I dissent. The district court understood and deferred to the facts found by the state habeas court, and then correctly concluded that the state court unreasonably applied Brady v. Maryland, 373 U.S. 83 (1963), to those facts. Accordingly, we should affirm its grant of the writ of habeas corpus to Steven Watkins.

I.

I agree with the majority that the state court did not base its denial of habeas relief on an unreasonable finding of the facts and that a federal court reviewing a state habeas ruling must defer to the state court's factual findings. But for these very reasons, I cannot agree that the district court erred in granting habeas relief. For in holding that the district court impermissibly "placed its own gloss upon the state court's factual findings," the majority itself does precisely that. This move enables the majority to reconstruct the narrative of this case to one more to its liking, but one that the state court never found, the State never espoused, and the record simply does not support.

A jury found Watkins guilty of the West Virginia crime of attempted robbery in the second degree, which requires proof that the would-be robber placed "the victim in fear of bodily

49

injury." W. Va. Code § 61-2-12(b). At the core of the majority opinion is the erroneous conclusion that the state habeas court did not find that before trial the prosecution possessed evidence that the victim of the attempted robbery had made an inconsistent statement about an element of the charged offense -- i.e., that he had not been "in fear of bodily injury" during the attempted robbery, as was required for conviction. The concurrence then adds some equally flawed arguments in an attempt to bolster this conclusion.

On the basis of these mistaken theories, the majority holds that the prosecutor's failure to inform the defense about this impeachment evidence did not violate Brady. But careful review of the record requires the contrary conclusion. The state habeas court did indeed find that before trial the prosecutor had evidence of the critical witness's lack-of-fear statement. And the prosecutor's failure to inform the defense of this evidence clearly violated Brady.

The factual finding of the state court at issue here reads in its entirety as follows:

> The Court FINDS that, at some time after the trial of this matter, trial counsel [Adkins] was told that Mr. Zimm [the witness] said he was not "afraid" at the time of the incident at issue. Assistant Prosecuting Attorney Brian Parsons, [E]sq. discussed with Mr. Zimm the definition of the word "fear" as it applied to the elements of the crime at issue, and that Mr. Parsons informed Mr. Zimm that if the element of fear did not exist, then the case could not be proven at trial.

50

> The discovery provided to the defense did not contain any reference to Mr. Zimm's alleged statement that he was not "afraid" or to the above described conversation between Mr. Parsons and Mr. Zimm.

J.A. 211. The state court found that <u>after</u> trial, Defense Counsel Adkins was told that the victim-witness, Mike Zimm, stated that he had not been afraid during the charged attempted robbery. The first sentence of the above paragraph makes that clear. Equally clear is that in the second sentence, the state court found that before trial, Prosecutor Parsons and witness Zimm had a conversation in which Parsons told Zimm that without evidence of his fear during the alleged attempted robbery, "the case could not be proven at trial." And in the third sentence, the state court indisputably found that the prosecution did not turn over to the defense, prior to trial, any evidence about this conversation or about any statement the witness, Zimm, made during the conversation.

### A.

The majority opinion focuses on the timing of Zimm's alleged lack-of-fear statement, holding that the district court erred in concluding the state court found Zimm's alleged lack of fear statement to have occurred before trial. But it is the majority that errs here. The <u>timing</u> of Zimm's alleged statement has never been in dispute. The State has never contended that

51

Zimm made the alleged statement to the prosecutor after trial, and does not do so on appeal before us.

To the contrary, Prosecutor Parsons himself, in responding to the habeas petition in state court, recounted that the conversation about the fear element took place prior to trial in the course of a discussion about the necessity of proof of this element at trial.  Thus, in the State's written response to the habeas petition, Parsons explained:

> [I] spoke with the [sic] Mr. Zimm on at least two occasions prior to the trial of the matter to [sic] as a part of the trial preparation process.  I recall having a conversation with Mr. Zimm about the definition of the word "fear" as it applied to the legal elements requiring proof in the trial of the respondent.  Mr. Zimm did not state that he was "never afraid", but rather he sought a better understanding of what fear meant in the context of this case.  (The Court should understand that a certain amount of bravado existed as to the relationship between [me] and Mr. Zimm and a reluctance to express fear months after an incident is natural between two men.)  I did, however, inform Mr. Zimm that if the element of fear did not exist the case could not be proven at trial.

J.A. 303-04 (emphasis added).  Absent from Parsons' explanation to the state habeas court is any suggestion that the contention in the habeas petition as to the timing of Zimm's alleged lack of fear statement was wrong -- i.e., that the statement did not take place before trial.  To the contrary, Parsons defended his nondisclosure of evidence of Zimm's statement by placing it in the context of pre-trial witness "preparation" regarding proof of the fear element at trial.

52

Moreover, Prosecutor Parsons took exactly the same approach at the evidentiary hearing before the state habeas court. When he cross examined Defense Counsel Adkins, Parsons neither challenged Adkins' recollection of his post-trial conversation with Parsons nor suggested that Zimm could have made the alleged statement after trial. See J.A. 200-01; 195. Rather, Parsons again sought to place Zimm's alleged statement within their pre-trial conversation about the fear element. In sum, the state prosecutor's consistent account -- in his written response to the state habeas petition and at the evidentiary hearing before the state court -- was that Zimm's alleged fear statement occurred before trial.

It is clear from the state habeas court's factual findings that the court accepted and adopted Prosecutor Parsons' uncontroverted account as to the timing of the alleged fear statement. Indeed, the state court's very wording closely mirrors that of the prosecutor's response to the habeas petition. Compare J.A. 211, with J.A. 303-04. Thus, in context, there is only one way to read the first two sentences of the state court's factual findings: the initial sentence describes how, after trial, Prosecutor Parsons told Defense Counsel Adkins that the witness, Zimm, stated he had not been afraid; and the second sentence places this statement in the context of a pre-trial conversation between prosecutor and

witness about the necessity of proof of the element of fear at trial. This conclusion, contrary to the majority's suggestion, does not conflate the conversation between Parsons and Zimm before trial with the conversation between Parsons and Adkins after trial. Rather, it recognizes that in his post-trial conversation with Defense Counsel Adkins, Prosecutor Parsons relayed the substance of his pre-trial conversation with Zimm.

On appeal before us, the State repeats this very same version of the critical events for a third time. Its brief to this court is utterly bereft of any suggestion that the district court's conclusion about the timing of Zimm's alleged statement is incorrect. To the contrary, the district court's view that the state court found that the alleged statement occurred before trial is one in which the State explicitly concurs. Thus, in its appellate brief, the State recounts: "After finding that Mike Zimm [the witness] made a pre-trial statement to the prosecutor that he was not 'afraid' during the attempted robbery, the state [habeas] court concluded that no Brady violation had occurred." Appellant Br. 13 (emphasis added); see also id. at 20-21.

In sum, the record offers no support for the majority's conclusion that the district court "impermissibly alter[ed]" the state habeas court's factual findings to conclude that Zimm's alleged statement to the prosecutor occurred before trial. That

54

the state court found that Zimm's alleged statement occurred before trial -- a view espoused by the State itself -- is the only reading that finds support in the record.[1]

B.

The concurrence offers some additional arguments in an attempt to bolster the decision to deny habeas relief to Watkins. None is convincing.

First, the concurrence adopts the <u>sole</u> argument offered by the State itself as to why the district court assertedly erred in concluding that the state court had found that <u>Prosecutor Parsons</u> told Adkins about Zimm's alleged lack-of-fear statement. Although the state court expressly found that "at some time after the trial of this matter," Adkins "was told that Mr. Zimm said he was not 'afraid' at the time of the incident," J.A. 211, the concurrence contends that, in doing so, the state court "clearly declined" to find that it was Prosecutor Parsons who told Adkins this. The State similarly asserts that an

---

[1] Indeed, if the state habeas court had found that the alleged statement occurred <u>after</u> trial, that determination would have been unreasonable. The only evidence as to the timing of Zimm's alleged statement that was presented to the state habeas court was Parsons' account that it took place before trial. For the state court to have disregarded this account and instead concluded that the alleged statement occurred at some other time would have been flatly contradicted by the record before it, and thus a patently unreasonable finding of fact. Such unreasonable fact findings, of course, provide the basis for habeas relief. <u>See</u> 28 U.S.C. § 2254(d)(2).

55

"unidentified individual" told Adkins "about an alleged statement by Zimm." Appellant Br. 18.

By using the passive voice, the state habeas court did not identify by name the individual who, after trial, told Defense Counsel Adkins that Zimm had said, prior to trial, that he was not afraid. And it may well be that in his federal habeas petition, Watkins overstated the strength of Adkins' testimony describing the post-trial conversation in which Prosecutor Parsons told him about witness Zimm's statement. But we must defer to the state court's finding that Adkins "was told" that Zimm stated he was not afraid at the time of the robbery, J.A. 211, in light of the evidence that was before the state court. As the district court concluded, that evidence offers not even a suggestion that anyone other than Prosecutor Parsons told Adkins about Zimm's alleged statement. Rather, the only possible conclusion to draw from the record is that Parsons is the person who relayed this information to Adkins.

To be sure, Adkins initially indicated that he did not "recall" a conversation in which Parsons told him that Zimm had made the lack-of-fear statement. J.A. 194. Immediately thereafter, however, Adkins corrected himself and testified that he did recall this conversation with Parsons. Adkins used qualifying words and equivocal phrases about what, precisely, he heard, and suggested that his "contemporaneous note would

56

probably be more accurate than [his] memory." J.A. 195. But despite his qualifications about <u>what</u> was said during this conversation, Adkins was not at all equivocal about <u>who said it</u>. It was the prosecutor: Parsons. <u>Id.</u> When asked whether "Parsons suggested that Mr. Zimm had told him he wasn't afraid of Mr. Watkins," Adkins responded in the affirmative. <u>Id.</u> at 194. Moreover, throughout the rest of his testimony, Adkins identified Parsons, and only Parsons, as the person who told him about Zimm's alleged lack-of-fear statement. <u>Id.</u> at 194-95 (when asked about his "independent recollection of that conversation," responding "yes . . . Mr. Parsons had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins;" and when asked if he recalled "who was present at the time that it was stated," responding "other than me and Mr. Parsons, no.").

No evidence was presented at the habeas hearing that anyone else relayed this information to Adkins. No evidence was presented to suggest that it was not Parsons who made the statement to Adkins. And Prosecutor Parsons himself, appearing as the State's counsel at the habeas hearing, <u>did</u> <u>not</u> dispute that it was he. Thus, in finding that after trial, Adkins "was told" that Zimm said he was not afraid during the attempted

57

robbery, J.A. 211, the state habeas court necessarily found that Prosecutor Parsons told Adkins this.[2]

Second, the concurrence maintains that in his written statement, Prosecutor Parsons asserted "that he had a pretrial conversation with Zimm about the element of fear that did not include the alleged lack-of-fear statement," and "explicit[ly] deni[ed] that Zimm made the alleged lack-of-fear statement." (emphasis in concurrence). But in fact Parsons, who the state habeas court undoubtedly recognized had every reason to minimize Zimm's "lack-of-fear" during the robbery, nowhere asserted -- in his written statement or orally -- that their pre-trial conversation "did not include [Zimm's] alleged lack-of-fear statement." Nor did Parsons "explicit[ly] den[y] that Zimm made the alleged lack-of-fear statement." And Parsons never disputed that he told Adkins, after trial, about Zimm's alleged lack-of-fear statement. In other words, Prosecutor Parsons, although in

---

[2] The concurrence finds it significant that Watkins could have presented a stronger case to support this finding and repeatedly argues that I have "shift[ed] the burden to the state to disprove [Watkin's] allegations." These arguments misconstrue what is simply the proper deference due to a state habeas court's factual findings. Of course, Watkins' case, like most others, in retrospect could have been stronger. But when considered in conjunction with the prosecution's lackluster showing at the evidentiary hearing, Watkins certainly provided a sufficient basis for the state court's finding that Prosecutor Parsons told Adkins about Zimm's alleged statement. The critical fact remains that the state habeas court made this finding, and AEDPA requires that we owe it deference.

the courtroom when accused of a <u>Brady</u> violation, never denied that he possessed during trial helpful impeachment evidence that he failed to turn over to the defense.

Rather, Parsons attempted to finesse exactly what witness Zimm said at their pre-trial meetings. Thus, in his written statement to the state habeas court, Parsons parsed and qualified their exchanges. He did not explicitly deny that he acquired exculpatory information at that time, nor did he deny that Zimm had told him he might not have been afraid at the time of the attempted robbery. Instead, Parsons simply stated that Zimm "did not state that he was 'never afraid.'" J.A. 304. These words, of course, leave open the possibility that Zimm did say something short of never being afraid but still not amounting to the required not in "fear of bodily injury." Prosecutor Parson's statement is certainly not the categorical denial one would expect from a prosecutor accused of a <u>Brady</u> violation.

Moreover, Parsons acknowledged in the same written statement that "a certain amount of bravado existed as to the relationship between [himself] and Mr. Zimm," and thus Zimm had "a reluctance to express fear months after" the attempted robbery. <u>Id.</u> And Parsons conceded in his statement that he had informed Zimm "that if the element of fear did not exist[,] the case could not be proven at trial." <u>Id.</u> Thus, upon

59

consideration of the entire record before it, the state habeas court was certainly justified in making the factual finding that it did; i.e., that "at some time after the trial of this matter, [Watkins'] trial counsel was told that Mr. Zimm said he was not 'afraid' at the time of the incident at issue." J.A. 211. The concurrence apparently disagrees with the finding, but we must defer to a state habeas court's factual findings unless unreasonable. 28 U.S.C. § 2254(d)(2). Nothing is unreasonable about this finding.

In sum, the record is devoid of support for the concurrence's suggestion that the experienced district court judge "rewrote the state court's factual finding" in order to conclude that it was Parsons who told Adkins that Zimm made the alleged lack-of-fear statement. Based on the record before the state court, the only possible source of this information regarding Zimm's alleged statement was Prosecutor Parsons, who never denied that he had possessed exculpatory evidence prior to Watkins' trial. There was, and is, no basis for the state court to have found that Adkins "was told" about Zimm's alleged lack-of-fear statement without also finding that Parsons is the person who told him about it.

C.

My colleagues seek to exploit the state habeas court's failure to more explicitly articulate factual findings that were

60

unassailably clear from the record.  This approach fails to defer, as we must, to those _implicit_ factual findings of a state habeas court, which are compelled by its explicit findings: _i.e._, it was Prosecutor Parsons who told Adkins, after trial, that Zimm had stated, before trial, that he was not afraid during the attempted robbery.

The concurrence refuses to afford deference to these implicit factual findings because it maintains that they are "inconsistent" with the state court's decision to "deny Watkins' _Brady_ claim."  Not so.  The finding that a prosecutor possessed and failed to disclose to the defense favorable impeachment evidence is not inconsistent with a denial of habeas relief.  A prosecutor's withholding of such evidence does not automatically trigger a _Brady_ violation.  Rather, the evidence withheld must also be material.  _Brady_, 373 U.S. at 87.  Thus, in a given case, a state habeas court could certainly find that a prosecutor had withheld exculpatory evidence, but conclude that the evidence was _not_ material, and so deny _Brady_ relief.  That apparently is precisely what the state court did here.  For after making its findings, it summarily concluded that the State's actions "did not violate the dictates of _Brady v. Maryland_," without specifying why this was so.  This conclusion -- that the prosecution withheld evidence without violating

61

<u>Brady</u> -- is not logically inconsistent with the denial of Watkins' <u>Brady</u> claim.[3]

Moreover, even were the state court's factual findings somehow inconsistent with its judgment, we could not withhold deference on that ground. The concurrence errs in suggesting that we owe deference to implicit findings <u>only</u> when they are "consistent with" or "necessary to" the state court's judgment. That is simply not the law. Rather, the presumption of correctness afforded to a state habeas court's factual findings broadly "extends not only to express findings of fact, but to the implicit findings of the state court." <u>Garcia v. Quarterman</u>, 454 F.3d 441, 444 (5th Cir. 2006); <u>see also</u> <u>Taylor v. Horn</u>, 504 F.3d 416, 433 (3d Cir. 2007) (same); <u>Lujan v. Tansy</u>, 2 F.3d 1031, 1035 (10th Cir. 1993) (same). Were the rule otherwise, federal courts could read ambiguities into state habeas findings and then invent scenarios to resolve them that justify denying habeas relief. AEDPA deference does not permit this.[4]

---

[3] However, as explained below, the evidence withheld here <u>is</u> material and so in this case the state court erred as a matter of law in denying habeas relief.

[4] Even when we review a state court's <u>summary</u> adjudication of a habeas claim, in which the court has made <u>no</u> explicit factual findings to which we can defer, we infer implicit findings "from . . . [the state court's] opinion <u>and</u> <u>the</u> <u>record</u>" of the state habeas court -- not from the judgment alone. (Continued)

To be sure, as the concurrence notes, when appropriate, on AEDPA review federal courts do imply factual findings that align with the state court's ultimate judgment. That is undoubtedly the correct course in a case where "it can scarcely be doubted from [the state court's] written opinion that [the petitioner's] factual contentions were resolved against him." LaVallee v. Delle Rose, 410 U.S. 690, 692 (1973); see also Marshall v. Lonberger, 459 U.S. 422, 433 (1983) (implying factual finding from the judgment where state court's "failure to grant relief was tantamount to an express finding against . . . the defendant"). But this is not such a case. Here, "it can scarcely be doubted" from the state court's "written opinion," LaVallee, 410 U.S. at 692 (1973) -- including its express findings of fact and "the inferences fairly deducible from these facts," Marshall, 459 U.S. at 435 -- that Watkins' factual contentions were resolved in his favor, notwithstanding the court's ultimate judgment against him.

In sum, when viewed in light of the evidence before it, the state court's factual findings compel only one version of

Blankenship v. Hall, 542 F.3d 1253, 1272 (11th Cir. 2008) (emphasis added). As the concurrence concedes, implied factual findings, even those that may be consistent with the state court's judgment, "'cannot be imagined from thin air.'" Id. at 1272 n.5 (quoting Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992)).

63

events: that Parsons told Adkins, after trial, that Zimm stated, before trial, that he was not afraid during the attempted robbery. We cannot eschew a straightforward reading of the state court's factual findings simply because it renders that court's ultimate judgment unreasonable. Rather, AEDPA expressly instructs that we grant habeas relief in such circumstances. See 28 U.S.C. § 2254(d).[5]

II.

Of course, Watkins cannot prevail on his Brady claim simply by proving that, prior to trial, the prosecution possessed favorable impeachment evidence which it did not disclose.[6] Watkins must also show that such evidence was material,

_____

[5] The concurrence contends this approach "turns AEDPA deference on its head," but it is the concurrence that has it backwards. The proper approach, of course, is to first examine the state court's factual findings and to accord them a "presumption of correctness," deferring to them unless unreasonable. 18 U.S.C. § 2254(e)(1). The concurrence, however, on the basis of its evaluation of the strength of Watkins' evidence, assertedly gives the state court "the benefit of the doubt" by reading that court's factual findings to accord with the concurrence's own evaluation of the evidence. It is not surprising that, starting from the wrong premise, the concurrence arrives at the wrong conclusion.

[6] The State does not dispute that evidence of Zimm's statement regarding fear was favorable to Watkins. And the state habeas court expressly found that "[t]he discovery provided to the defense did not contain any reference to Mr. Zimm's alleged statement that he was not 'afraid' or to the above described conversation between Mr. Parsons and Mr. Zimm." J.A. 211. Thus, Watkins has satisfied these Brady requirements.

64

Strickler v. Greene, 527 U.S. 263, 281-82 (1999), and that the state court unreasonably determined that the prosecution's failure to disclose such evidence did not violate Brady. Harrington v. Richter, 562 U.S. 86, 97-98 (2011); see also 28 U.S.C. § 2254(d)(1).

The test for materiality in this context is well-established. Undisclosed evidence is material if "there is a reasonable probability that, had the evidence been disclosed [to the defense], the result of the proceeding would have been different." Smith v. Cain, 132 S. Ct. 627, 630 (2012) (quotation marks and citation omitted). A court considering the materiality of undisclosed evidence "need not be convinced to an absolute[] certainty that proper disclosure[] . . . would have resulted in a different verdict." Monroe v. Angelone, 323 F.3d 286, 316 (4th Cir. 2003). For "[a] reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence," but rather that "the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." Smith, 132 S. Ct. at 630 (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quotation marks and alterations omitted)).

In this case, the record makes clear that Zimm's trial testimony that he had feared the defendant during the alleged attempted robbery was fundamental to a successful prosecution.

65

The record is also clear that the element of fear was fiercely contested throughout trial. Thus, the likelihood of a different result had the prosecution disclosed evidence that Zimm stated before trial that he had not been afraid during the alleged attempted robbery is great enough to undermine confidence in the outcome of the trial.

Critically, at trial, Zimm was the State's primary witness, and the State's only witness who testified to being in fear of bodily injury from defendant Watkins. The jury was properly instructed that, to prove attempted robbery in the second degree, the State had to prove beyond a reasonable doubt that Watkins committed an "assault that placed Mike Zimm in fear of bodily harm." J.A. 130. Prosecutor Parsons himself confirmed Zimm's role as the key witness on the fear element in his memorandum to the state habeas court, recounting that he had "inform[ed] Mr. Zimm that if the element of fear did not exist the case could not be proven at trial." J.A. 304.

The State nevertheless contends that evidence that Zimm stated before trial that he had not been afraid was not material because other evidence at trial suggested that Zimm had in fact been fearful. To this end, the State cites evidence that the other pharmacy employees knew of a rash of recent pharmacy robberies in the area; that Watkins' clothing "made clear" that he intended to rob the pharmacy; that Watkins had his hands at

his waistband, "where he <u>could</u> have had a weapon"; and that another pharmacy employee described how Zimm's facial expression changed when Watkins entered the store, thereby "corroborat[ing] Zimm's description of his fear." Appellant Br. at 21-22 (emphasis in original).

As the district court noted, however, all of this evidence was relevant only to show that Zimm was credible and to <u>corroborate</u> his trial testimony about being afraid. J.A. 402. Of course, as the State suggests, the jury could have discounted evidence of Zimm's pre-trial lack of fear statement, even if the State had disclosed it. But this argument "merely leaves us to speculate about which of [Zimm's] contradictory declarations the jury would have believed." <u>Smith</u>, 132 S. Ct. at 630. Such speculation does not render evidence immaterial. For, although "the State's argument offers a reason that the jury <u>could</u> have disbelieved" Zimm's alleged lack of fear statement, it "gives us no confidence that it <u>would</u> have done so." <u>Id.</u> (emphases in original).

Not only was Zimm's trial testimony that he was in fear of the defendant literally elemental to the prosecution's case, attacking the fear element was the sine qua non of the defense's trial strategy. From opening statement to closing argument, the defense repeatedly and vigorously contended that the evidence did not demonstrate that an assault (requiring fear of bodily

harm) had taken place. See, e.g., J.A. 14; 138-39. At the close of the State's case, the defense moved for a directed verdict, relying in large part on the State's failure to prove fear. Defense Counsel Adkins argued that because his client did not swing at Zimm, did not brandish a weapon, and did not verbally threaten him, Zimm could not have been in fear of bodily harm. J.A. 98. The State responded that during trial Zimm "said that he was fearful," that Zimm had also testified that he was aware of several recent pharmacy robberies, and that the defendant had been dressed and behaved in a way that caused Zimm to "have apprehension." J.A. 100-01. In denying the motion for directed verdict, the state trial court twice remarked that "it's a close call," but ultimately determined that "the jury may well find that Mr. Zimm was, in fact, under assault and . . . feared for himself." J.A. 104.

Plainly then, evidence that Zimm had stated, before trial, that Watkins had not caused him to be afraid would have been crucial to the defense. The defense could have used that evidence to argue reasonable doubt, to reinforce other evidence suggesting that Zimm was not afraid, or perhaps most critically, to undermine Zimm's credibility on the central issue of fear. "[W]hen the witness in question supplied the only evidence of an essential element of the offense," impeachment evidence is frequently material, "especially if the undisclosed evidence was

68

the only significant impeachment material."  See United States v. Parker, No. 13-4989, slip op. at 16 (4th Cir. 2015) (quotation marks and citation omitted).  Indeed, we have noted that when, as here, "the jury had to believe that [the witness] was credible and that his version of events was in fact truthful and accurate in order to support [the defendant's] conviction," the materiality of evidence impeaching that witness is "manifest."  See Wolfe v. Clarke, 691 F.3d 410, 424 (4th Cir. 2012) (quotation marks and citation omitted).

Watkins established before the state habeas court a clear Brady violation:  the prosecutor possessed and did not disclose evidence that a witness said that he was not afraid during the alleged attempted robbery; fear was an essential element of the crime; that witness was the State's key witness on the fear element; and the fear element was hotly contested throughout the trial.  Given the critical nature of the impeachment evidence here, it was unreasonable for the state habeas court not to conclude that the State had violated its Brady obligations.

The district court properly granted habeas relief.  The majority's contrary holding piles a further injustice on a man already victimized by improper governmental action.